



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS A. O'DONNELL,    :

    Plaintiff     :

            :

    vs.       :

            :

UNITED STATES of AMERICA,   :

DEPARTMENT OF DEFENSE,    :

DEFENSE SECURITY SERVICE,   :

WASHINGTON HEADQUARTERS   :

SERVICE, the DEFENSE CONTRACT  :

AUDIT AGENCY, JENNIFER     :

LINDENBAUM and ROBERT MELBY, :

            :

    Defendants.   : **<u>DEMAND FOR JURY TRIAL</u>**

**FILED**

JAN - 9 2004

MICHAEL E. KUNZ, Clerk

04-10 By_____ Dep. Clerk

## <u>COMPLAINT</u>

Thomas A. O'Donnell brings this action against the Department of Defense, the Defense Security Service, Washington Headquarters Service, the Defense Contract Audit Agency, Jennifer Lindenbaum and Robert Melby, for numerous violations of the Privacy Act of 1974, 5 U.S.C.A. §552a and the Regulations promulgated pursuant thereto, for violations of Pennsylvania's Mental Health Procedures Act, 50 P.S. §7101, *et seq.*, and for violations of privacy rights under the United States Constitution..

### <u>The Parties</u>

1. Plaintiff Thomas A. O'Donnell ("O'Donnell") is, and at all relevant times has been, employed by the Department of Defense ("DoD"), Defense Contract Audit Agency in the Mid-Atlantic Region, which has offices at 615 Chestnut Street, in Philadelphia, PA.

2.   O'Donnell currently resides at 45 Acorn Lane, Cape May Courthouse, New Jersey, 08210. At all times relevant to the instant claims, O'Donnell resided at 619 Mueller Road, Warminster, Pennsylvania.

3.   Defendant Department of Defense ("DoD") is an agency of the United States Government. DoD's Directorate For Freedom of Information and Security Review is located at 1155 Defense Pentagon, Washington, DC 20301.

4.   Defendant Defense Contract Audit Agency ("DCAA") is a "component" of the DoD, and has its Headquarters at 8725 John J. Kingman Road, Suite 2135, Ft. Belvoir, VA. DCAA performed contract cost audit services for DOD and other federal agencies.

5.   Defendant Defense Security Services ("DSS") is the "component" of the DoD responsible for investigating persons who are required to obtain security clearances. For that purpose, DSS conducts confidential investigations and maintains files that include confidential and personal information on the subject of their investigations. The DSS has offices at Route 291, 2 International Plaza, Philadelphia, PA 19113 and at 1340 Braddock Place, Alexandria, VA 22314-1651.

6.   Defendant Washington Headquarters Services ("WHS") is the "component" of the DoD that is responsible for the adjudication of personnel security clearances. WHS has offices at 1777 North Kent Street, Suite 12063, Arlington, VA 22209.

7.   Defendant Jennifer Lindenbaum is a Team Chief in the DCAA HQs Security Branch. At all times relevant to this complaint, Ms. Lindenbaum was the Acting Agency Security Officer for DCAA at its headquarters in Fort Belvoir, VA.

8.   At all times relevant to this Complaint, Defendant Robert Melby was the Deputy

Regional Director at DCAA's Mid-Atlantic Region, where the Plaintiff, Mr. O'Donnell, is employed.

**Jurisdiction and Venue**

9.    This Court has jurisdiction pursuant to 5 U.S.C.A. §552a(g)(1)(d); 28 U.S.C. §§1331, 1361, 1346(a) and (b), 2201, 2412 and 5 U.S.C. §701.

10.    Under 5 U.S.C.A. §552a(g)(5) and 28 U.S.C. §1402, venue is proper within the Eastern District of Pennsylvania because the plaintiff works within the Eastern District of Pennsylvania.

**Factual Background**

11.    For the past 34 years, Mr. O'Donnell has worked as an auditor of government defense contracts for DOD. Mr. O'Donnell is presently a Manager in the Technical Programs Division of the DCAA, Mid-Atlantic Region.

12.    At various times in his career, depending on the time period and his position, O'Donnell has been required to have security clearances. Since July 1985, upon being promoted to a GS-13 level position, Mr. O'Donnell has been subject to a periodic security background investigation by DOD in order to retain eligibility to remain in a sensitive position and for a security clearance.

13.    For security clearance investigations, DSS compiles information and maintains confidential "systems of records" on the subject of their investigations and reinvestigations. These files are called Security Background Personnel Review ("SBPR") files.

14.    On or about September 1, 1994, for a personal medical condition, which did not affect his work, O'Donnell received treatment from a psychiatrist.

15. In 1999, during a periodic reinvestigation, Mr. O'Donnell advised/informed the DSS investigators of his treatment, and assented to a DSS request to review his psychiatrist's records.

16. On January 28, 2000, O'Donnell signed a release authorizing DSS to review his records.

17. On July 26, 2001, Mr. O'Donnell received a confidential memorandum from WHS, through the DCAA HQs Security Office, requesting his assent to undergo an evaluation by an independent psychiatrist retained by them. Mr. O'Donnell assented to this in a confidential written memo to WHS.

18. On January 10, 2002, Mr. O'Donnell learned from a co-worker, Harry Olmo, that all or part of his SBPR file had been forwarded to the DCAA Mid-Atlantic Region in Philadelphia, where he works, and that this file was in the possession of Robert Melby, Deputy Director for the Mid-Atlantic Region, and Mr. O'Donnell's superior in the Mid-Atlantic Regional Office in Philadelphia.

19. On January 11, 2002, Mr. O'Donnell visited Mr. Melby's office and asked Mr. Melby if he was in possession of O'Donnell's SBPR file. Mr. Melby informed O'Donnell that he was in possession of the file and that he had opened and read its contents.

20. Mr. Olmo informed Mr. O'Donnell that Mr. Melby had offered the file to Olmo, who had been asked to schedule the evaluation. Mr. Olmo refused to take possession of, or read, any portion of O'Donnell's file. He did not need the file to arrange O'Donnell's appointment with the psychologist.

21. Mr. O'Donnell was shocked to learn that his file was in the possession of

DCAA's regional office and that Mr. Melby, his superior, had actually read the contents of the file.

22.    Mr. O'Donnell immediately asked to see his file, so that he could view its contents and determine what Melby and possibly others, had actually read about him, and to determine whether or not his rights had been violated.

23.    Mr. Melby told O'Donnell that he (O'Donnell) was not entitled to see his own file. Melby told O'Donnell that DCAA Headquarters would instruct him as to how to proceed in order to gain access to his file.

24.    Between January 11th and January 15th, Mr. O'Donnell made four phone calls to the DCAA Headquarters Acting Security Officer, Ms. Jennifer Lindenbaum, to find out what he had to do in order to review his own file.

25.    Ms. Lindenbaum did not return Mr. O'Donnell's phone calls until January 15, 2002, at which time Mr. O'Donnell was told by Lindenbaum:

- That DCAA had no written procedures for transmittal and handling of SBPR files or other files containing confidential and personal records; and;

- That DCAA had no written procedures for handling such confidential and personal files;

- O'Donnell's files had been sent to DCAA *solely* for the ostensible purpose of WHS having DCAA schedule the psychiatric evaluation;

- Ms. Lindenbaum had read his file; and

- Ms. Lindenbaum was aware that it contained Mr. O'Donnell's psychiatric records.

26.    Mr. O'Donnell again requested that he be permitted access to his own files so that he could determine whether his rights had been violated.

27.    In her capacity as Acting Security Officer for DCAA, Ms. Lindenbaum instructed Mr. O'Donnell to write to WHS (the DoD "component" that had forwarded the files to DCAA Headquarters) to request authorization under the Privacy Act to review his files.    Ms. Lindenbaum provided Mr. O'Donnell with the name and address of the person to whom he should direct his request.

28.    Also on January 15th, before O'Donnell had a chance to submit his written request to read his file, Harry Olmo informed O'Donnell that he (Olmo) had been instructed to forward O'Donnell's files to the psychiatrist *that very day;* O'Donnell asked Ms. Reilly to intervene, and she was able to postpone transfer of the files while O'Donnell awaited a decision on his request for access.

29.    On January 16, 2002 Mr. O'Donnell promptly submitted to WHS a written request for authorization to read his own file before it was sent out.

30.    On February 15, 2002, one month after O'Donnell submitted his written request to WHS for access to his files, WHS informed O'Donnell that he needed to provide proof of identity as a prerequisite to approval.

31.    On March 19, 2002 WHS informed O'Donnell that they could only turn over a small portion of the file (the documents generated by WHS), and that he would have to submit a separate request to DSS for access to the remaining majority portion of the file (the documents generated by DSS).

32.    On April 6, 2002, nearly three months after submitting his request to WHS, O'Donnell received from DSS the major portion of his file; (DSS provided additional information on April 26, 2002, which had been inadvertently omitted from the April 6th

transmission).

33. Mr. O'Donnell was stunned to discover that the files that Melby and Lindenbaum had read contained his actual psychiatric records, including the psychiatrist's handwritten notes.

34. At no time did Mr. O'Donnell authorize the disclosure of his psychiatric records to anyone outside of DSS.

35. At no time did Mr. O'Donnell authorize anyone to open or review any contents of his file.

36. O'Donnell had authorized the release of his psychiatric records to DSS only, in connection with his Periodic Reinvestigation, and only because he was informed by the DSS investigator that if he chose not to, DSS may be unable to determine his suitability or continued suitability or access to classified defense information or retention in a sensitive position. (Copies of Mr. O'Donnell's written releases and authorizations for disclosure to DSS are attached hereto as Exhibits A-1 through A-3.)

37. Mr. O'Donnell always understood and believed that his psychiatric records were strictly confidential, that they would not be disclosed outside of DSS, or disclosed to anyone who did not have an explicit need to review them, and that they would be returned to the psychiatrist after DSS review. He never understood that copies of his psychiatrist's treatment notes would be inserted into his security investigation file.

38. Mr. O'Donnell knows the following:

- That on or about August 18, 2000, DSS had transferred his SPBR file, including his actual psychiatric records, to WHS for use in adjudicating his security clearance;

- that DSS transferred the file under cover of a warning that read:

# WARNING

**THIS FILE IS THE PROPERTY OF THE DEFENSE SECURITY SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE DEFENSE SECURITY SERVICE.**

(A copy of this "WARNING" is attached hereto as Exhibit "B".)

- that notwithstanding the clear warning issued by DSS (Exhibit "B"), WHS transferred the entire file in its entirety including the psychiatric records to DCAA Headquarters.

39.    DCAA was asked only to *schedule* an independent psychiatric evaluation. Neither possession nor reading of the confidential files was necessary for this purpose.

40.    Nonetheless, in total disregard of the clear warning issued by DSS, and despite the fact that Ms. Jennifer Lindenbaum has no official duties that would require that she read Mr. O'Donnell's SPBR file and his psychiatric records, Ms. Lindenbaum read those files.

41.    O'Donnell now knows that his files remained in the possession of DCAA Headquarters for approximately seven months, and believes that the confidentiality of his files was not properly safeguarded during this time period.

42.    O'Donnell now knows that Ms. Lindenbaum read his files and records, despite the fact that she had no need to do so.

43.    O'Donnell now knows that DCAA Headquarters had sent the files, including his psychiatric records, to DCAA Mid-Atlantic Region, in an envelope containing the instruction:

8

*To be opened only by Barbara Reilly.*[1]

44.    O'Donnell now knows that Robert Melby kept the files either in his desk or in his possession and not in a safe, vault or file cabinet with a lock bar as required by DOD regulations.

45.    O'Donnell now knows that Robert Melby opened and read his files despite the instruction *"To be opened only by Barbara Reilly,"* and despite the clear warning issued by DSS, and despite the fact that he had no official reason or demonstrated need to read the files.

46.    The transfer of confidential files from WHS to DCAA Headquarters, and then to DCAA's Mid-Atlantic Region was wholly unnecessary in order to schedule a psychiatric evaluation. Not only should this task have been accomplished without transferring possession of the files to DCAA, the task *was* accomplished without the files. Harry Olmo scheduled the evaluation without ever having taken possession of the files and without having read them. WHS could have and should have transferred the files directly to the psychiatrist, after scheduling of the evaluation. DCAA Headquarters could have done the same, without reading the files and without sending them to its Mid-Atlantic Region. This approach would have been simple, logical and it would have preserved confidentiality, and would have provided the least intrusive disclosure process with regard to Mr. O'Donnell's right to privacy.

47.    Upon learning of the egregious violations of and intrusions upon his rights, Mr. O'Donnell promptly sought the assistance of his agency in pursuing administrative remedies.

48.    The DCAA Headquarters Privacy Act Advisor told him to contact Judy Smith, the Privacy Act Officer for the Mid-Atlantic Region. The Privacy Officer told Mr. O'Donnell that she had never been involved in a Privacy Act case regarding disclosure of personal information

---

[1] Barbara Reilly was and is the Regional Director for DCAA's Mid-Atlantic Region. The Regional Director of DCAA has nothing whatsoever to do with the adjudication of security clearances unless and until WHS were to make

and that she would have to consult with General Counsel for DCAA, in an attempt to ascertain the courses of action available to Mr. O'Donnell. No one seemed to know how to proceed.

49.    On April 15, 2002, at the direction of Mr. David Henshall, Mr. O'Donnell instituted pursuit of administrative remedies by submitting a Memorandum to Judy Smith, the Privacy Act Officer.

50.    Ms. Reilly, not Ms. Smith, responded on May 29, 2002, sidestepping the key issue of privacy, and simply reciting the general duties of a Deputy Regional Director.

51.    O'Donnell "appealed" the May 29th action by writing to Ms. Jody Trenary, Assistant Director, Resources, for the DCAA on June 27, 2002.

52.    Ms. Trenary responded on July 31, 2002, that there had been no unauthorized disclosure of personal information because Ms. Lindenbaum and Mr. Melby "had a specific need to know by virtue of the responsibilities of their positions within the Agency." Trenary also informed Mr. O'Donnell that he "should be aware that since the disclosure was consistent with the purpose for which the information was collected, no disclosure accounting is required." She failed to address any of the 13 specific requests for information included in Mr. O'Donnell's appeal letter. Ms. Trenary's letter expressly concluded the administrative remedies process.

53.    No one has ever articulated any reasons why Lindenbaum or Melby needed to read Mr. O'Donnell's files. No valid reasons exist.

54.    No one has ever articulated a legitimate reason for O'Donnell's file and psychiatric records to have been disclosed to DCAA. A legitimate reason does not exist.

55.    Further, DCAA admittedly lacks internal procedures for safeguarding the

---

an unfavorable decision regarding the employee, and only then if the employee opted to appeal that decision. The Mid-Atlantic Region had simply been asked by DCAA Headquarters to schedule the psychiatric evaluation.

confidentiality of personal information such as SPBR files and psychiatric records, and it has affirmatively rejected O'Donnell's request that such internal procedures be implemented.

56.    Similarly, WHS, DSS and the DoD have failed to implement adequate safeguards of personal privacy. The DoD has wholly failed to implement and/or adequately monitor its own Privacy Program so as to safeguard such privacy rights.

57.    By steadfastly maintaining, in the face of fundamental logic, that Mr. Melby and Ms. Lindenbaum actually *needed* to read the files, by refusing to offer so much as an apology, and by refusing to take any steps to implement procedures to safeguard the privacy rights of O'Donnell and other employees in the future, DCAA has demonstrated a flagrant, conscious, willful, intentional and callous disregard for Mr. O'Donnell's privacy rights and for the privacy rights of all employees.

59.    By their decision to read Mr. O'Donnell's file in spite of the knowledge that it contained psychiatric records, the clear and bold DSS warning page, and specific DOD and DCAA regulations prohibiting such behavior, Mr. Melby and Ms. Lindenbaum willfully and intentionally violated Mr. O'Donnell's privacy through a flagrant disregard of Mr. O'Donnell's rights.

59.    Plaintiff has exhausted all administrative remedies except as to his tort claims. O'Donnell submitted a Standard Form 95 to the Department of Defense seeking actual damages in the amount of $500,000 as a result of the tortious conduct of all of the Defendants.

## COUNT I

### Against DCAA & DOD

**(Pursuant to 5 U.S.C.A. §552a(g)(1),
for violations of the Privacy Act of 1974, 5 U.S.C.A. §§552a(b) and (e)(10);
for violations of the DoD Privacy Program, 32 CFR §§310.5,**

**310.8 and 310.13, and DOD 5400.11-R; and
for violations of the DCAA Privacy Act Program, 32 CFR §§317.3 and 317.4)**

60.    Plaintiff incorporates by reference all of the allegations set forth in

¶¶ 1 through 59 above, as though fully set forth herein.

61.    DCAA's willful and intentional disclosure and use of Mr. O'Donnell's confidential

and private files to DCAA employees, who had nothing to do with adjudicating Mr. O'Donnell's

security clearance, constitutes a violation of each of the following: subsections (b) and (e)(10) of

the Privacy Act of 1974, 5 U.S.C. §§552a(b) and 552a(e)(10); the DoD Privacy Program, 32 CFR

§§310.5, 310.8 and 310.13 and DOD 5400 11-R; and the DCAA Privacy Program, 32 CFR

§§317.3, 317.4 and 317.6.

62.    DCAA continues to deny that it violated O'Donnell's rights in any way and

that it breached any duties to him.

63.    DCAA's violations are ongoing and continuous.

WHEREFORE, Plaintiff Thomas A. O'Donnell respectfully requests that this

Court enter an Order

    (a)    Declaring that DCAA failed to respect and protect O'Donnell's personal privacy, in violation of The Privacy Act of 1974, the DoD Privacy Program, and the DCAA Privacy Act Program;

    (b)    Declaring that no DCAA employee (including Acting Security Officers, Regional Directors and Deputy Regional Directors) may have access to an employee's SPBR file while a security clearance investigation is in the adjudication process, and then only until and unless both WHS reaches an unfavorable decision regarding the employee and the employee opts to appeal the decision;

    (c)    Declaring that the scheduling of a psychiatric evaluation does not constitute a "demonstrated need" for any DCAA employee to read an SPBR file and psychiatric records;

    (d)    Awarding Plaintiff monetary damages under 5 U.S.C.A. §552a(g)(4) for

12

the agency's intentional and willful conduct;

(e)   Awarding Plaintiff his attorneys' fees and costs of suit; and

(f)   Granting any other relief that this Court deems to be fair and just.

## COUNT II

### Against DCAA, WHS & DOD

**(Pursuant to 5 U.S.C.A. §552a(g)(1), for violations of
the Privacy Act of 1974, 5 U.S.C.A. §552a(d);
the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13 and DOD 5400.11-R;
and the DCAA Privacy Act Program, 32 CFR §§317.3 and 317.4)**

64.   Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 63 above, as though fully set forth herein.

65.   DCAA's and WCS's refusal to permit within a reasonable period of time, O'Donnell to review and copy his files while they remained in the possession of DCAA and Mr. Robert Melby, and their delay in providing such access for approximately three months was an intentional and willful violation of subsections (d) and (e)(10) of the Privacy Act of 1974, 5 U.S.C.A. §§552a(d) and 552a(e)(10); an intentional and willful violation of the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13; and an intentional and willful violation of the DCAA Privacy Act Program, 32 CFR §§317.3 and 317.4.

66.   DCAA's and WCS's refusal to permit O'Donnell to review his files resulted in a delay of nearly three months before O'Donnell was able to discover what his colleagues had read.

67.   During this three-month waiting period, O'Donnell's files remained in the possession of DCAA's employee, Robert Melby, without adequate safeguards of O'Donnell's privacy.

13

68.    DCAA's and WHS's refusal to permit O'Donnell to review his own files, and DCAA's lack of adequate privacy safeguards, caused O'Donnell extreme distress, anxiety and sleeplessness.

WHEREFORE, Plaintiff Thomas A. Donnell respectfully requests that this Court enter an Order in his favor and against the DCAA and WHS.

(a)    Declaring that DCAA and WHS violated O'Donnell's rights under the Privacy Act of 1974, the DoD Privacy Program, and the DCAA Privacy Act Program, by refusing O'Donnell timely access to his own files;

(b)    Declaring that DCAA failed to adequately safeguard O'Donnell's personal privacy, in violation of the Privacy Act of 1974, the DoD Privacy Program, and the DCAA Privacy Act Program;

(c)    Awarding Plaintiff monetary damages for DCAA's and WHS's intentional and willful conduct;

(d)    Awarding Plaintiff attorneys' fees and costs of suit; and

(e)    Granting any other relief that this Court deems to be fair and just.

## COUNT III

### Against DCAA & DOD

**(Pursuant to 5 U.S.C.A. §552a(g)(1), for violations of numerous provisions of the Privacy Act of 1974, 5 U.S.C.A. §552a; the DoD Privacy Program, 32 CFR §310.1, et seq.; and the DCAA Privacy Act Program, 32 CFR §317.1, et seq.)**

69.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 68 above, as though fully set forth herein.

70.    As Ms. Lindenbaum acknowledged on January 15, 2002, the DCAA had no written procedures for handling security background files that came into its possession. Moreover, the DCAA wholly lacked and still lacks adequate safeguards of personal privacy of its

employees.

71.    By failing and refusing to implement procedures to safeguard the confidentiality of files such as SBPRs and psychiatric records, the DCAA is in violation of the DCAA Privacy Act Program, 32 CFR §317.3 and 317.4, in addition to the Privacy Act of 1974, 5 U.S.C. §552a(e)(10) and the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13.

72.    DCAA's conduct constitutes an intentional, willful and continuing violation of the aforementioned statues and regulations.

73.    Mr. O'Donnell has suffered embarrassment, humiliation, sleeplessness and emotional distress as a result of DCAA's breach of its statutory and regulatory obligations.

WHEREFORE, Plaintiff Thomas A. O'Donnell respectfully requests that this Court enter an Order

(a)    Declaring that DCAA was and is in violation of the Privacy Act of 1974, 5 U.S.C. §552a, the DoD Privacy Program and DCAA Privacy Act Program;

(b)    Directing DCAA to implement adequate safeguards of employees' personal privacy rights and confidential files, which safeguards should include, *inter alia,*:

(i) prohibition of all DCAA Headquarters and Regional employees from reviewing an SPBR file prior to a final adjudication by WHS and then only unless and until both WHS reaches and unfavorable decision with regard to the employee and the employee opts to appeal the decision;

(ii)    a requirement that DCAA Headquarters send an SPBR file directly to a medical/psychiatric evaluator, without reading it and without sending it through the regional office; and

(iii)    a requirement that DCAA keep an SPBR file in a safe vault or file cabinet with lock bar while in DCAA's possession, should it ever be necessary for DCAA to possess such files;

(c)    Awarding plaintiff actual damages in the amount of $500,000;

(d)    Awarding Plaintiff Attorneys' fees and costs of this suit; and

15

(e)    Granting the Plaintiff any other relief that this Court deems to be fair and just.

## COUNT IV

### Against DSS

### (Pursuant to 5 U.S.C.A. §552a(g)(1) for violation of subsection (e)(1) of the Privacy Act of 1974, 5 U.S.C.A. §552a(e)(1), and the DoD Privacy Program, 32 CFR §310.1, et seq.)

74.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 73 above, as though fully set forth herein.

75.    By maintaining O'Donnell's actual psychiatric records as part of his SPBR Files and/or by disclosing the psychiatric records to WHS, DSS violated subsection (e)(1) of the Privacy Act of 1974, 5 U.S.C.A. §552a(e)(1), and several provisions of the DoD Privacy Program, including 32 CFR §310.5 written policy considerations.

76.    DSS's violation of the Privacy Act of 1974 and the DoD Privacy Program, 32 CFR §310.5, constituted a violation of O'Donnell's rights and caused him embarrassment, humiliation and emotional distress.

WHEREFORE, Plaintiff Thomas A. O'Donnell respectfully requests that this Court enter an Order in his favor and against the Defendants,

(a)    Declaring that DSS' retention of psychiatric records in their entirety, as part of the "system of records" violates 5 U.S.C. §552a(e)(1) and the DoD written policy considerations at 32 CFR §310.5;

(b)    Directing DSS to implement procedures that will adequately safeguard personal privacy and the confidentiality of psychiatric records in the future;

(c)    Awarding plaintiff actual damages in the amount of $500,000

(d)    Awarding Plaintiff his attorneys' fees and costs of suit; and

(e)    Granting Plaintiff any other relief that this Court deems to be fair and just.

## COUNT V

### Against DSS

**(Pursuant to 5 U.S.C.A. §552a(g)(1) for violation of
the Privacy Act of 1974, 5 U.S.C.A. §§552a(e)(9) and(10),
and the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13)**

77.    Plaintiff incorporates by reference all of the allegations set forth in

¶¶ 1 through 76 above, as though fully set forth herein.

78.    DSS has failed to implement adequate procedures for safeguarding an employee's

personal privacy, in violation of the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13,

and the Privacy Act of 1974, 5 U.S.C.A. §§552a(e)(9) and (10).

79.    DSS's violation of applicable statutes and regulations has caused   O'Donnell

embarrassment, humiliation and emotional distress.

WHEREFORE, Plaintiff Thomas A. O'Donnell respectfully requests that this

Court enter an Order in his favor and against the Defendants,

(a)    Declaring that DSS has failed to implement adequate procedures designed to safeguard personal privacy rights, in violation of the DoD Privacy Program, 32 CFR §§310.5, 310.8 and 310.13, and the Privacy Act of 1974, 5 U.S.C.A. §§552a(e)(9) and (10).

(b)    Directing DSS to implement practices and procedures that will adequately safeguard personal privacy and the confidentiality of psychiatric records in the future;

(c)    Awarding plaintiff actual damages in the amount of $500,000

(d)    Awarding Plaintiff his attorneys' fees and costs of suit; and

(e)    Granting Plaintiff any other relief that this Court deems to be fair and just.

17

## COUNT VI

### Against DSS

### (For violations of Plaintiff's Privacy Rights under The United States Constitution and the Constitution of the Commonwealth of Pennsylvania)

80.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 79 above, as though fully set forth herein.

81.  DSS' disclosure of O'Donnell's psychiatric records to WHS exceeded the scope of O'Donnell's written authorization for disclosure to DSS.

82.    Under the law of the Commonwealth of Pennsylvania and the United States Constitution, psychiatric records are protected under the right to privacy.

83.    DSS's unauthorized disclosure of O'Donnell's psychiatric records was an intentional and willful violation of O'Donnell's privacy rights under the United States Constitution and the Constitution of the Commonwealth of Pennsylvania.

84.    DSS's unauthorized disclosure of O'Donnell's psychiatric records has caused O'Donnell mental anguish, humiliation, embarrassment and emotional distress.

WHEREFORE, Plaintiff Thomas A. O'Donnell requests that this Court enter an Order in his favor and against DSS,

(a)    Awarding Plaintiff monetary damages in the amount of $500,000;

(b)    Awarding Plaintiff his attorneys' fees and costs of suit; and

(c)    Granting Plaintiff any other relief that this Court deems to be fair and just.

## COUNT VII

### Against the United States of America (and DSS)

### (Pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §1346 and §2679

18

**for DSS's and its employees' violation of Pennsylvania's
Mental Health Procedures Act, 50 P.S. §7101, et seq.)**

85.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 84 above, as though fully set forth herein.

86.    By disclosing Mr. O'Donnell's psychiatric records to WHS without O'Donnell's express written authorization to do so, DSS and employees of DSS violated Pennsylvania's Mental Health Procedures Act, 50 P.S. §§7111 and 7113.

87.    Under the Federal Tort Claims Act, the United States of America is liable for the tortious conduct of its agencies and their employees.

88.    All of the acts complained of were within the scope of employment by the DSS, its employees, and the United States of America.

89.    Plaintiff has suffered embarrassment, humiliation, emotional distress and an invasion of his privacy and other rights because of DSS's conduct.

WHEREFORE, Plaintiff Thomas A. O'Donnell requests that this Court enter an Order in his favor and against DSS, awarding Plaintiff monetary damages in the amount of $500,000.

## COUNT VIII

### Against DSS

**(Pursuant to 5 U.S.C.A. §552a(g)(1) for violations of
the Privacy Act of 1974, 5 U.S.C.A. §552a, (e)(3) and (e)(4))**

90.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 89 above, as though fully set forth herein.

91.    In order to obtain O'Donnell's psychiatric records from the treating physician, DSS requested that O'Donnell sign an authorization for release of information.  O'Donnell

agreed to sign, and did sign such a form.

92.     The authorization form O'Donnell signed did not conform to the requirements of (e)(3) of the Privacy Act and DSS otherwise failed to comply with the requirements of subsection (e)(3).

93.     DSS failed to comply with the requirements of subsection (e)(4) of the Privacy act by failing to publish in the Federal Register the information so required.

WHEREFORE, Plaintiff Thomas A. O'Donnell requests that this Court enter an Order in his favor and against DSS

    (a)    Declaring that DSS is in violation of subsections (e)(3) and (e)(4) of the Privacy Act of 1974;

    (b)    Directing that DSS comply with subsections (e)(3) and (e)(4) of the Privacy Act of 1974;

    (c)    Awarding plaintiff actual damages in the amount of $500,000;

    (d)    Awarding the Plaintiff his attorneys' fees and costs of suit; and

    (e)    Awarding the Plaintiff any other relief that this Court deems to be fair and just.

## COUNT IX

### Against WHS

**(Pursuant to 5 U.S.C. §552a(g)(1) for violations of
the Privacy Act of 1974, 5 U.S.C.A. §§552a(b) and (e)(10) and
the DoD Privacy Program, 32 CFR §310.5, 310.8 and 310.13)**

94.     Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 93 above, as though fully set forth herein.

95.     WHS's disclosure of Mr. O'Donnell's SPBR files and his psychiatric records to DCAA (who had nothing whatsoever to do with the adjudication of O'Donnell's security

clearance) was an intentional and willful violation of subsection (b) of the Privacy Act of 1974, 5 U.S.C.A. §552a, and the DoD Privacy Program, 32 CFR §310.5

96.    WHS's willful failure to implement any safeguards of personal privacy with respect to information such as psychiatric records and SBPR files constitutes an intentional and willful violation of the Privacy Act of 1974, 5 U.S.C.A. §§552a(e)(9) and (10) and the DoD Privacy Program, 32 CFR §§310.5, 310,8 and 310.13.

97.    WHS' failure to respond in a timely manner to Donnell's request for access to his own files was a willful and intentional violation of subsection (d) of the Privacy Act of 1974.

WHEREFORE, Plaintiff Thomas A. O'Donnell requests that this Court enter an Order in his favor and against WHS

(a)    directing WHS to implement practices and procedures to adequately safeguard the personal privacy with regard to information such as psychiatric records and SBPR files;

(b)    awarding monetary damages in the amount of $500,000.00;

(c)    awarding attorneys' fees and costs of suit; and

(d)    granting any other relief that this Court deems to be fair and just.

## COUNT X

### Against the United States of America

### (and Jennifer Lindenbaum, Robert Melby, DCAA and the DoD)

### (Under the Federal Tort Claims Act, 28 U.S.C.A. §§1346 and 2679 For "Intrusion Upon Seclusion")

98.    Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 97 above, as though fully set forth herein.

99.    O'Donnell had a clear right to privacy in his psychiatric records and the

21

information contained in his SPBR, and a reasonable expectation that such records would remain confidential.

100.    Despite the fact that a reasonable person would know that psychiatric records and security clearance files are personal, private and confidential, and in disregard of the clear written WARNING attached by DSS to the confidential files, Defendants Lindenbaum and Melby nonetheless opened the files and read them.

101.    Lindenbaum and Melby had no right or demonstrated need to read the confidential files.

102.    The actions of Melby and Lindenbaum were intentional and willful intrusions upon Mr. O'Donnell's privacy rights, and constitute the tort of "intrusion upon seclusion" under the law of Pennsylvania and Virginia.

103.    Mr. O'Donnell has suffered embarrassment and humiliation as a result of the Defendants' willful and intentional conduct.

104.    Jennifer Lindenbaum is, and at all relevant times has been, an employee and representative of the DCAA, a component of the DoD.  The acts complained of were within the scope of her employment with the DCAA.

105.    At all relevant times Robert Melby was an employee and representative of the DCAA, a component of the DoD.  The acts complained of were within the scope of Mr. Melby's employment with the DCAA.

106.    The DoD is an agency of the United States government.

107.    Under the Federal Tort Claims Act, the United States of America is responsible for the tortious acts of Lindenbaum, Melby, the DCAA and the Department of Defense, and for

the disclosure of records by WCS and DSS.

WHEREFORE, Plaintiff Thomas A. O'Donnell respectfully requests that this Court enter an Order in his favor and against the United States of America in the amount of $500,000.00.

## COUNT XI

### Against Jennifer Lindenbaum, Robert Melby, the DoD and the DCAA

### (For violations of the Plaintiff's privacy rights Under the United States Constitution)

108. Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 107 above, as though fully set forth herein.

109. The actions of Jennifer Lindenbaum and Robert Melby were deliberate and intentional violations of O'Donnell's privacy rights, and such invasion of privacy would be apparent to any reasonable person standing in the shoes of either Melby or Lindenbaum. Neither Melby or Lindenbaum had a reasonable basis for believing that he or she needed to read Mr. O'Donnell's psychiatric records in order to perform their official duties.

110. The above actions constitutes a flagrant violation of O'Donnell's rights under the United States Constitution.

111. As a result of the intentional and deliberate violation of his privacy rights, O'Donnell has suffered embarrassment, humiliation, mental anguish and emotional distress.

112. The DCAA not only permitted the violation of O'Donnell's constitutional rights in the first instance, it persisted in condoning the violation, and has refused to acknowledge that it was wrong in any way.

113. The DCAA and the DoD should be held accountable for the actions of

23

Lindenbaum and Melby.

WHEREFORE, Plaintiff Thomas A. Donnell respectfully requests that this Court issue an Order in his favor and against Lindenbaum, Melby, the DoD and the DCAA, awarding $500,000.00 for actual damages, together with an award of Punitive damages, attorneys' fees, costs of suit, and any other relief which this Court deems to be fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Date:   January 9, 2004

GREGORY T. MAGARITY, ESQUIRE
MARK W. DRASNIN, ESQUIRE
Law Offices of Gregory T. Magarity
Pier 5, Penns's Landing, Suite 200
7 N. Christopher Columbus Blvd.
Philadelphia, PA  19106
(215) 351-3980

Attorney for Plaintiff
Thomas A. O'Donnell

24